IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED SATES OF AMERICA : | |
|     Plaintiff, : | |
| : | |
| v. : | CRIMINAL ACTION NO. |
| : | 1:12-CR-322-AT |
| SANTAS HERNANDEZ : | |
|     Defendant. : | |

## **MEMORANDUM OPINION**

The Court issued an Order on January 13, 2014 [Doc. 80] denying Defendant's Motion to Suppress Evidence [Doc. 13]. This Memorandum sets forth in greater detail the Court's findings and analysis.

As summarized in the Court's prior order, the Magistrate Judge's Report and Recommendation ("R&R") [Doc. 49] recommended the denial of Defendant's Motion. Defendant thereafter filed objections to the R&R's factual and legal findings and recommendations [Doc. 52]. Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the R&R that is the subject of a proper objection on a *de novo* basis and any non-objected portion on a "clearly erroneous" standard. Accordingly, the Court has reviewed the record in this case on a *de novo* basis, including all videos among other items, and additionally conducted a supplemental evidentiary hearing on November 21, 2013.[1]

---

[1] The Magistrate Judge conducted an evidentiary hearing on March 27, 2013.

## I.   DISCUSSION

After a thorough review of the record, the Court adopts the factual summary set forth in the R&R, subject to the following modifications and exceptions. Specifically, the Court makes the following supplemental findings:

1.   On Sunday, June 24, 2012, Douglas County Police Department Justin Manwaring conducted a traffic stop of Defendant Santas Hernandez.  The stop was based on Deputy Manwaring's asserted reasonable suspicion or probable cause determination that Hernandez had committed the traffic offense of failing to drive the vehicle "as nearly as practicable entirely within a single lane . . . until the driver has first ascertained that such movement can be made with safety[.]"  O.C.G.A. § 40-6-48(1).  The video and testimony in this case indicate that Ms. Hernandez drove carefully and within speed limits when she was stopped by Deputy Manwaring.[2]  The road conditions at very most indicated light to moderate traffic.  Although Deputy Manwaring had been dispatched expressly for the purpose of stopping Hernandez's vehicle on the basis of a traffic violation, he did not manually turn on the patrol car's video camera. Instead, the video was automatically activated shortly before the actual traffic stop.  (Tr. 11/21/2013 Hrg. at 34-35.)  Thus, the video available only

---

[2] Deputy Manwaring testified at the supplemental hearing that Hernandez drove under the speed limit during the 20 minute time frame in which he followed her.  (Tr. Hrg. 11/21/2013 at 6.)

2

captures the second purported lane change violation, when Hernandez's tires touched the dotted marking-lines on the right side of the lane.[3] (*Id.* at 36.)

    2.    No evidence from the hearing or any other source suggests that Ms. Hernandez's driving was in reality suspicious, risky, or suggestive of intoxication or an actual lack of control of the car. Instead, the stop was based on Deputy Manwaring's application of a hyper-technical interpretation regarding the scope of the prohibition on "lane touching" under O.C.G.A. § 40-6-48(1). Deputy Manwaring testified at the supplemental hearing that Ms. Hernandez touched the lane marker line twice and that he stopped Defendant solely and strictly based on her purported technical violation of touching the line of her lane while driving on two occasions. (*Id.* at 35.) As Deputy Manwaring testified, "I didn't pull her over for weaving . . . I pulled her over for driving over the lane lines." (*Id.* at 36.) He considered any touching of the lane line whatsoever to constitute a Georgia traffic law violation, even if the driver had neither waved within the lane nor exhibited other driving conduct that might suggest incapacity. Thus, Deputy Manwaring testified, "[a traffic] violation occurs when the vehicle touches the line" even if many drivers in fact incidentally touch the lane lines while driving on the highway. (*Id.* at 37.)

---

[3] On Ms. Hernandez' side of the road, there were three lanes in which traffic travelled in the same direction; Ms. Hernandez drove in the center lane.

3

3. Based on its review of the video showing Defendant's driving on June 24, 2012, the Court finds that while the Defendant's vehicle may have touched the marking line of the lane on the second occasion noted by Deputy Manwaring, the car did not veer or do more than touch the marking line. The testimony did not indicate that Hernandez completely or partially crossed into the lane of traffic of another vehicle.

4. Although Deputy Manwaring viewed the first incident not captured in the video as involving somewhat more marked lane touching or "drifting," the Defendant's first lane touching incident as described in his testimony does not materially differ from the second touching incident captured by videotape.[4] (*Id.* at 36-37; Tr. 3/27/13 at 18, 52.)

5. Under the above factual circumstances, the Court declines to adopt the Magistrate Judge's determination that the traffic stop was lawfully initiated based on probable cause or reasonable suspicion that Defendant had violated O.C.G.A. § 40-6-48. That statute provides:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic . . . (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety[.]

O.C.G.A. § 40-6-48(1).

---

[4] While Deputy Manwaring testified that he observed a vehicle to the right of Defendant the first time she touched the lane, he saw no cars around her in either lane the second time she touched the lane. (Hrg. 3/27/13 at 64-65.) He further testified that he would not have stopped her for the first incident alone. (*Id.* at 52.)

4

The Court agrees with Judge Evans' recent decision analyzing the Georgia courts' interpretation and application of this traffic standard. *United States v. Bryson,* 2013 WL 5739055 (N.D. Ga. Oct. 21, 2013). Judge Evans first summarized the standard applicable to assessing the constitutionality of the traffic stop:

> "A traffic stop constitutes a 'seizure' within the meaning of the Fourth Amendment's protection against unreasonable searches and seizures." *United States v. Smith,* 448 F. App'x 936, 938 (11th Cir. 2011) *cert. denied,* 133 S.Ct. 1453 (2013) (citation omitted). However, a traffic stop of a vehicle is constitutional if it is based on probable cause to believe that a traffic violation has occurred or if officers have a "reasonable, articulable suspicion" that an individual is engaged in criminal activity. *United States v. Harris,* 526 F.3d 1334, 1337 (11th Cir. 2008) (per curiam) (quoting *United States v. Powell,* 222 F.3d 913, 917 (11th Cir. 2000)).

*Id.* at *3. After discussing relevant Georgia case authority, Judge Evans concluded that touching the line "is a factor that may, *in combination with other conduct,* give rise to probable cause justifying a traffic stop" but that "*in the absence of such additional conduct,* the mere touching of the white dashed line between two or more clearly marked lanes is insufficient" by itself to provide a basis for law enforcement to stop the vehicle. *Id.* at *4 (emphasis supplied). In *Bryson*, as in this case, the defendant's conduct "involved nothing more than touching the lane line on two occasions." *Id.*

6. Judge Evans found in *Bryson*, however, that while the defendant's touching of the white dashed line did not give rise to probable cause, the state trooper was justified in stopping the defendant's vehicle

5

because there were "specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct" – namely that defendant was driving under the influence. *Id.* at *5. The Court found that as in *Semich*,[5] where the driver's weaving and abrupt turning around at 1:30 a.m. gave rise to a reasonable suspicion, the fact that the defendant's driving conduct occurred at or about 3:00 a.m. provided a basis or additional factor supporting reasonable suspicion. *Id.* Specifically, while the defendant's conduct in *Bryson* involved lane touching, the state patrol officer testified that he found that this lane touching was significant because (1) it occurred at 3:07 a.m when in his experience drivers are coming from clubs serving alcohol, and (2) that drivers under the influence commonly fail to maintain their lanes. *Id.* In the instant case, by contrast, the Defendant was driving early Sunday afternoon, and Officer Manwaring observed no other "additional" conduct or conditions that would suggest the driver's intoxication or other conduct whatsoever indicating a safety risk or traffic violation.[6] Accordingly, the Court finds that the traffic stop cannot be

---

[5] *Semich v. State*, 506 S.E.2d 216 (Ga. Ct. App. 1998).
[6] Compare with, *e.g.*, *Acree v. State*, 737 S.E.2d 103, 105 (Ga. Ct. App. 2013) (upholding traffic stop where the officer had observed the defendant's vehicle tires cross the white safety fog line on the right hand side of the road and then veered back to touch the centerline before drifting back and touching the fog line and subsequently detected an odor of alcohol from the vehicle); *Polk v. State*, 700 S.E.2d 839, 841 (Ga. Ct. App. 2010) (finding basis for traffic stop because the driver broke the plane of the outermost edge of the center line and also weaved within his lane and struck a lane marker, and was viewed by the officer as driving in a manner as a whole to be unsafe); *Semich v. State*, 506 S.E.2d at 218-19 (finding that weaving in lane that was suggestive of intoxication in combination with "furtive conduct of abruptly changing" course of travel to avoid encountering visibly present police provided sufficient grounds for traffic stop);

justified based on probable cause or reasonable suspicion due to Defendant's driving conduct.

6.     The R&R appears to suggest that Defendant's cash as well as that of all occupants in her car lay openly on top of and outside of their purses.  (R&R at 8.)  However, the testimony of Officer Manwaring, as clarified at the supplemental hearing, indicates the Defendant's cash was not plainly viewable to an observer inspecting the car, as it was contained inside her purse which was zipped closed.  (Tr. Hrg. 11/21/2013 at 39-40.)  The cash of the other female occupants of the car was contained within their purses but evidently at the top of their open purses, in plain view.  (*Id.* at 38-39.)

7.     Defendant argues that the evidence was insufficient to support the Government's claim that Homeland Security Investigations ("HSI") Investigator Yates had reasonable suspicion that Defendant was engaged in prostitution activities.  She argues that the HSI investigation had been ongoing for two years and effectively had failed to reveal any concrete evidence – beyond the initial complaint of her niece (a juvenile) to the police that triggered the investigation and evidence that the Defendant regularly traveled with other women from Gwinnett County to Alabama to frequent nightclubs – upon which to base criminal arrest or charges.  (Obj.

---

*Allenbrand v. State*, 458 S.E.2d 382, 383 (Ga. Ct. App. 1995) (upholding traffic stop where officer viewed the driver on the outside lane, "weaving onto the center line and then jerking back into its lane of travel" on several occasions).

to R&R at 9.)  It is true that the HSI investigation did not reveal any direct evidence of prostitution and does not seem to have materially advanced over the two years since it was launched.  At the same time, the Defendant's continuing pattern of conduct itself raises an objective basis for reasonable suspicion.  If Ms. Hernandez went partying at bars or nightclubs with friends in Alabama only on an occasional basis – several hours away from her home in metropolitan Atlanta – this might well not be sufficient evidence to anchor a police officer's reasonable suspicion of prostitution.

However, the persistence of Defendant's continued pattern of travel to nightclubs in Alabama with other women over a period of two years – a pattern consistent with the complaint filed by her niece – changed to some degree the factual posture of the investigation.  Based on the totality of circumstances, Investigator Yates had a reasonable basis for suspicion that Defendant was traveling out of metropolitan Atlanta on a regular basis in order to engage in prostitution, rather than merely for socializing purposes.  It was therefore reasonable for him to conclude that these circumstances would authorize Defendant's brief *Terry* detention when she was driving her van with other women back to Atlanta from a nightclub in Montgomery, Alabama. *See United States v. Bautista-Villanueva*, 524 F. App'x 476, 478 (11th Cir. 2013) (holding that "[t]he principal components of a determination of reasonable suspicion or probable cause will be viewed

8

from the standpoint of an objectively reasonable police officer.") (citing *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003)).

8. While HSI Investigator Yates held such a reasonable suspicion, there is no direct evidence that Deputy Manwaring was familiar with the details or even outline of the HSI investigation of Ms. Hernandez's conduct.  In finding that Manwaring could legitimately briefly stop and detain Defendant's vehicle based on reasonable suspicion, independent of the purported traffic violation, the R&R erroneously assumed that HSI Investigator Yates had been in communication with Manwaring.  (R&R at 4, 19.)[7]  At the Court's supplemental evidentiary hearing, Yates clarified that he had been in communication about the investigation with Douglas County Deputy Yount, rather than Deputy Manwaring.  (Tr. 11/21/2013 at 5.)

Officer Manwaring testified that his stop of the Defendant was solely based on Hernandez's purported traffic violation, though he indicated an awareness some that some other investigation was ensuing.  "If she didn't commit a traffic violation, we would have let her just leave Douglas County . . . the only – the only time that we would stop the car is if the vehicle was

---

[7] At the March 27th hearing conducted by the Magistrate Judge, the Assistant U.S. Attorney asked HSI Investigator Yates about the information he had provided in advance of the traffic stop to Officer Yount or Manwaring from the Douglas County Police Department.  (Tr. 3/27/2013 Hrg. at 78.)  However, Yates proceeded to testify in response solely as to the briefing he had given Officer Yount as to the background behind the HSI investigation and his initial contact with the Douglas County Police Department (presumably superior officers) regarding his request for its cooperation.  (*Id.* at 78-80.)

committing a traffic violation or a [sic] equipment violation. We don't stop a vehicle just because of a different investigation." (*Id.* at 35.) In response to the Court's follow-up question, "you understood at that point that you didn't have authority to do it based on suspicion as to any other type of conduct?" Deputy Manwaring answered: "Yes, ma'am. That's why I stopped her for failure to maintain lane. It wasn't for whatever other investigation was going on." (*Id.* at 36.)

Still, the totality of testimony adduced through both evidentiary hearings suggests that Manwaring had received at least some minimum amount of information indicating that the Douglas County Police Department had been asked to assist federal HSI agents in their investigation. This is also a reasonable inference because Deputy Yount was working as Manwaring's partner on June 24th, the day of the traffic stop, though the Court notes that they worked in separate cars. (*Id.* at 33.)

These circumstances are sufficient to trigger the collective knowledge doctrine. Yates and Yount, the officers with knowledge of the investigation here, in effect directed Manwaring, who was aware of a bare minimum of information of the facts of the federal investigation, to conduct a traffic stop if feasible based on Yates' reasonable suspicion of Defendant's prostitution activity. *See United States v. Kapperman*, 764 F.2d 786, 791, n. 5 (11th Cir. 1985) (relying on *Whiteley v. Warden*, 401 U.S. 560 (1971) in finding that the fact that the task force officers who

ordered the stop by radio had reasonable suspicion to believe defendant was carrying drugs satisfies the *Terry* requirements for an investigative stop); *United States v. Rodriguez–Alejandro,* 664 F. Supp. 2d 1320, 1335 (N.D. Ga. 2009) (Thrash, J.) ("Where the investigative stop is performed by an officer at the direction of other officers, the Court must examine the collective knowledge of all of the officers in determining whether there existed reasonable suspicion.").

Based on the foregoing, the Court concludes:

(a) The Defendant's stop could not be legally justified sheerly based on the purported reasonable suspicion of her commission of a traffic violation under the facts presented here.

(b) A *Terry* stop nevertheless could be justified based on HSI Investigator Yates's awareness of evidence suggestive of Defendant's engaging in prostitution and his collaboration for law enforcement purposes with the Douglas County Sheriff's Department, and in particular, Deputy Yount and through Yount, his partner, Deputy Manwaring.

(c) The remainder of the Magistrate Judge's factual and legal analysis is correct, based upon the Court's review of the current record, except as otherwise discussed in this Memorandum.

## II. CONCLUSION

Based on its independent review of the totality of the record, the Court **OVERRULES** Defendant's Objections [Doc. 52] to the Magistrate's R&R. Subject to the modifications and exceptions specified in this Order, the Court **ADOPTS** the Magistrate Judge's Final Report and Recommendation [Doc. 49] and **DENIES** the Defendant's Motion to Suppress Evidence [Doc. 13].

It is so **ORDERED** this the 14th day of February, 2014.

_____
**Amy Totenberg**
**United States District Judge**